Carolyn G. STEWART

v.

**The MAY DEPARTMENT STORES D/B/A Foley's, et al**

**No. CIV.A. 02–139–B–M2.**

United States District Court, M.D. Louisiana.

Sept. 5, 2003.

---

**32.** *Id.*

**33.** *See* Motions to Remand at p. 10–12.

Charles G. Clayton, IV, Sanford & Associates, Jeffry L. Sanford, Baton Rouge, LA, for Plaintiff.

Dominic Joseph Gianna, Douglas S. Scotti, Middleberg, Riddle & Gianna, Thomas Mente Benjamin, Lemle & Kelleher, LLP, Frederic Theodore LeClercq, Deutsch, Kerrigan & Stiles, New Orleans, LA, C. Michelle Mitchell–Bromfman, Office of Legal Counsel to the May Department Stores Company, Catherine E. Sison, St. Louis, MO, William Glenn Burns, Hailey, McNamara, Hall, Larmann & Papale, Metairie, LA, for Defendants.

## RULING ON SAKS FIFTH AVENUE INC.'S MOTION FOR SUMMARY JUDGMENT AND THE MAY DEPARTMENT STORES COMPANY D/B/A FOLEY'S AND DANNY DUPREE'S MOTION FOR SUMMARY JUDGMENT

POLOZOLA, Chief Judge.

This matter is before the Court on motions for summary judgment filed by Saks Fifth Avenue, Inc.[1] ("Saks"), and The May Department Stores Company d/b/a Foley's and Danny Dupree [2](May). Carolyn Stewart has filed oppositions to both motions.[3]

1. Rec. Doc. No. 66.

2. Rec. Doc. No. 78.

3. Rec. Doc. Nos. 74 and 86.

Saks contends it is entitled to summary judgment because the plaintiff cannot meet the elements of racial hostile work environment claim. Although Saks does not directly address the state law claims and did not move for summary judgment on these claims, it does state that the analysis for the hostile work environment claim is the same under all of the applicable statutes (42 U.S.C.2000e or 42 U.S.C. § 1981, and Louisiana Anti–Discrimination law, LSA–R.S. 23:331 *et seq.*, LSA R.S. 51:2231 *et seq.*); Saks does not claim plaintiff has failed to exhaust administrative remedies.

In response to Saks' motion for summary judgment, plaintiff relies on *Walker v. Thompson.*[4] More specifically, plaintiff argues that Saks is liable for the hostile work environment created by Danny Dupree while Ms. Stewart worked for Saks.

Plaintiff also contends that the Court has previously rejected Saks' arguments when it denied an earlier motion for summary judgment.

May seeks summary judgment on the racial hostile work environment and all state law claims. In its motion, May argues that Dupree is not an employer under Title VII and, therefore, cannot be personally liable.

May further contends that Ms. Stewart (1) did not exhaust all of her administrative remedies which is a prerequisite to filing a Title VII suit; (2) cannot demonstrate a racial hostile work environment because she cannot meet the elements; (3) cannot establish the elements of her state law claims.[5]

In her opposition, the plaintiff states that May is asserting the same arguments previously rejected by the Court.[6] Finally, plaintiff contends that her charge of discrimination against May was adequate to preserve her hostile work environment claim and she has presented adequate evidence to defeat summary judgment.

## A. Summary Judgment Standard of Review

Law and Analysis

## B. Summary Judgment Standard

Summary judgment should be granted if the record, taken as a whole, "together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[7] The Supreme Court has interpreted the plain language of Rule 56(c) to mandate "the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial,[8] nonmovant's case."[9] If the

---

4. *Walker v. Thompson,* 214 F.3d 615 (5th Cir. 2000).

5. There was no state law claim of Intentional Infliction of Emotional Distress in either the state or federal claims. In any event, Ms. Stewart cannot prove the elements even if she did assert a claim of Intentional Infliction of Emotional Distress under the facts of this case.

6. These include arguments that Ms. Stewart never complained to the EEOC about discrimination by May, only retaliation. Even if she did complain of discrimination, that com-

plaint is not supported by the evidence in this case.

7. Fed.R.Civ.P. 56(c); *New York Life Ins. Co. v. Travelers Ins. Co.,* 92 F.3d 336, 338 (5th Cir. 1996); *Rogers v. Int'l Marine Terminals, Inc.,* 87 F.3d 755, 758 (5th Cir.1996).

8. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). *See also Gunaca v. Texas,* 65 F.3d 467, 469 (5th Cir.1995).

9. *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994) (*en banc*) (quoting Celotex, 477 U.S. at 323–25, 106 S.Ct. at 2553).

moving party "fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response."[10]

If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial.[11] The nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence.[12] Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."[13] The court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[14] Unless there is sufficient evidence for a jury to return a verdict in the nonmovant's favor, there is no genuine issue for trial.[15]

■ When affidavits are used to support or oppose a motion for summary judgment they "shall be made on personal knowledge, shall set forth facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."[16] Affidavits that are not based on personal knowledge or that are based merely on information and belief do not satisfy the requirements of Rule 56(e), and those portions of an affidavit that do not comply with Rule 56(e) are not entitled to any weight and cannot be considered in deciding a motion for summary judgment.[17] Neither shall conclusory affidavits suffice to create or negate a genuine issue of fact.[18]

■ In order to determine whether or not summary judgment should be granted, an examination of the substantive law is essential. Substantive law will identify which facts are material in that "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[19]

## C. Title VII Racial Hostile Work Environment Claim

### a. Individual Liability of Mr. Dupree

■ Title VII imposes liability only upon "employers" who violate its provisions.[20] During oral argument plaintiff

---

10. *Little*, 37 F.3d at 1075.

11. *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1046–47 (5th Cir.1996).

12. *Little*, 37 F.3d at 1075; *Wallace*, 80 F.3d at 1047.

13. *Little*, 37 F.3d at 1075. *See also S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 494 (5th Cir.1996).

14. *McCallum Highlands v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir.1995), *as revised on denial of rehearing*, 70 F.3d 26 (5th Cir.1995).

15. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–51, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

16. Fed.R.Civ.P. 56(e). *See also Beijing Metals & Minerals Import/Export Corp. v. American Business Ctr., Inc.*, 993 F.2d 1178, 1182 (5th Cir.1993).

17. *Richardson v. Oldham*, 12 F.3d 1373, 1378–79 (5th Cir.1994).

18. *McCallum Highlands v. Washington Capital Dus*, 66 F.3d 89, 92 (5th Cir.1995); *Travelers Ins. Co. v. Liljeberg Enterprises, Inc.*, 7 F.3d 1203, 1207 (5th Cir.1993); *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir.1992).

19. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

20. 42 U.S.C. § 2000e–2.

considered that Dupree, as an individual employee of Saks and May, respectively, does not meet the statutory definition of "employer" under Title VII.[21] Thus, he cannot be held liable under Title VII. Therefore, Dupree's motion for summary judgment is granted without opposition.

### b. Elements of Title VII Racial Hostile Work Environment Claim

The Supreme Court has recognized that hostile environment claims are cognizable under Title VII for discrimination on the basis of race.[22]

■ "A prima facie case of racial harassment alleging hostile work environment normally consists of five elements: (1) the employee belongs to a protected group; (2) the employee was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action."[23]

■ In hostile environment harassment cases based upon racial discrimination where the harassment is allegedly committed by a supervisor with immediate authority over the victim, the plaintiff employee need only satisfy the first four elements set out above.[24]

■ "To survive summary judgment, the [plaintiff] must create a fact issue on each of the elements of a hostile work environment claim: (1) racially discriminatory intimidation, ridicule and insults that are; (2) sufficiently severe or pervasive that they; (3) alter the conditions of employment; and (4) create an abusive working environment."[25]

■ "In determining whether a working environment is hostile or abusive, all circumstances must be considered, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.' "[26]

■ In evaluating the work environment, courts have used a subjective/objective test that examines the employee's reaction to his or her work environment as well as the reasonableness of the claim.[27] The Fifth Circuit in the *Walker* case set forth the test very clearly as follows: "The

---

**21.** 42 U.S.C. § 2000e(b); *Grant v. Lone Star Company*, 21 F.3d 649 (5th Cir.1994), *cert. denied*, 513 U.S. 1015, 115 S.Ct. 574, 130 L.Ed.2d 491 (1994).

**22.** *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986).

**23.** *Celestine v. Petroleos de Venezuela SA*, 266 F.3d 343 (5th Cir.2001), *Rehearing and Rehearing en Banc Denied*, 275 F.3d 48 (5th Cir.2001) (citations omitted).

**24.** RICHEY, CHARLES R., MANUAL OF EMPLOYMENT DISCRIMINATION LAW AND CIVIL RIGHTS ACTIONS IN THE FEDERAL COURTS, § 1:39.51, (2d ed.2003), *citing Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998).

**25.** *Walker v. Thompson*, 214 F.3d 615 (5th Cir.2000) *referencing DeAngelis v. El Paso Mun. Police Officers Ass'n*, 51 F.3d 591, 594 (5th Cir.1995) (hostile work environment based on sexual harassment).

**26.** *Walker* at 625, *citing Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 114 S.Ct. 367, 371, 126 L.Ed.2d 295 (1993).

**27.** RICHEY, CHARLES R., MANUAL ON EMPLOYMENT DISCRIMINATION LAW AND CIVIL RIGHTS ACTIONS IN THE FEDERAL COURTS, § 1:39.51 (2d ed.2003) *citing Daniels v. Essex Group, Inc.*, 937 F.2d 1264 (7th Cir.1991).

[plaintiff] must show that the discriminatory conduct was severe or pervasive enough to create an objectively hostile or abusive working environment."[28] Thus, in order to survive summary judgment, Ms. Stewart will have to prove the preceding elements or at least create an issue of material fact on these issues.

The Eastern District of Louisiana discussed these requirements in *Hardy v. Federal Express Corp:*[29] "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive— is beyond Title VII's purview."[30] The *Hardy* court further noted that the Fifth Circuit recognizes that the Supreme Court has "contrasted physically threatening or humiliating conduct, which will support a claim for hostile work environment, from a 'mere offensive utterance,' which will not."[31] "Thus, '[m]ere utterance of an ethnic or racial epithet which engenders offensive feelings in an employee would not sufficiently alter terms and conditions of employment to violate Title VII.'"[32]

Applying the above legal standard to the facts of this case, it is clear that Ms. Stewart cannot meet her burden of proof because her allegations do not rise to the level necessary to create a hostile work environment claim nor do they create a material issue of fact in dispute on the issue. Furthermore, there have been cases where far more frequent utterances have been made and they have been held not to rise to the level needed to establish a hostile work environment claim. Some examples are those cited in the Eastern District's *Hardy* case where the court noted:

"In *Vaughn v. Pool Offshore Co.*, 683 F.2d 922 (5th Cir.1982), the Fifth Circuit did not find a hostile work environment where plaintiff was directly called racial epithets by coworkers." Similarly, in *Grant v. UOP, Inc.*, 972 F.Supp. 1042 (W.D.La.1996), *aff'd*, 122 F.3d 1066 (5th Cir.1997), the court held that five separate utterances of the word "nigger" directly to the plaintiff were insufficient to establish a hostile work environment claim. See also, *Smith v. Beverly Health and Rehabilitation Serv., Inc.*, 978 F.Supp. 1116 (N.D.Ga.1997) (holding that a several utterances of racial epithets by a supervisor were insufficient to support hostile work environment claim); *McCray v. DPC Indus., Inc.*, 942 F.Supp. 288 · (E.D.Tex.1996) (holding that five uses of the terms "black Yankee" and "son," two racial jokes, and the use of the word "nigger" were insufficient to establish a hostile work environment claim).

Thus, the Court finds as a matter of fact and law that plaintiff has failed to prove her claim for racial hostile work environment.

## c. Exhausting Administrative Remedies

■ The Fifth Circuit has held that raising a claim with the EEOC is a condition precedent to any Title VII suit.[33] In

---

28. *Walker* at 625–626, *citing Harris* at 370.

29. 1998 WL 419716 (E.D.La.).

30. *Id.citing DeAngelis v. El Paso Municipal Police Officers Association, 51 F.3d* 591, 594 (5th Cir.1995) *cert. denied,* 516 U.S. 974, 116 S.Ct. 473, 133 L.Ed.2d 403 (1995).

31. *Hardy* at *9, *citing Long v. Eastfield College,* 88 F.3d 300, 309 (5th Cir.1996), *citing Harris,* 510 U.S. at 22, 114 S.Ct. at 371.

32. *Id.citing Faragher,* 524 U.S. at 786, 118 S.Ct. 2275, 141 L.Ed.2d 662, (internal citations and quotations omitted).

33. *Young v. City of Houston, Texas,* 906 F.2d 177 (5th Cir.1990).

the *Young* case, the Fifth Circuit cited its *Sanchez v. Standard Brands, Inc.*[34] wherein the court discussed the condition precedent analysis as follows:

> "...the 'scope' of the judicial complaint is limited to the 'scope' of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination."

The Fifth Circuit in *Sanchez* went on to state that:

> "The logic of this rule is inherent in the statutory scheme of Title VII. A charge of discrimination is not filed as a preliminary to a lawsuit. On the contrary, the purpose of a charge of discrimination is to trigger the investigatory and conciliatory procedures of the EEOC. Once a charge has been filed, the Commission carries out its investigatory function and attempts to obtain voluntary compliance with the law. Only if the EEOC fails to achieve voluntary compliance will the matter ever become the subject of court action. Thus it is obvious that the civil action is much more intimately related to the EEOC investigation than to the words of the charge which originally triggered the investigation. Within this statutory scheme, it is only logical to **limit the permissible scope of the civil action to the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.** (emphasis added).
> A more exacting rule would be destructive of the logic of the statutory scheme, for it would impede the ability of the Commission to effect voluntary compliance. If an alleged discriminator knew that a particular issue which was the subject of EEOC conciliation efforts could never be the subject of a civil action, his incentive toward voluntary compliance would be lessened."

In *Young,* the Fifth Circuit acknowledged that the scope of inquiry is not, however, limited to the *exact* charge brought to the EEOC.[35]

In the case now pending before the Court, the facts reveal the same salon is involved under the ownership of two different companies, Saks and May, respectively. Likewise, the Court is dealing with two different complaints alleged at two different times alleging two different charges. Ms. Stewart's first complaint was filed on April 2, 2001 against Parisian (Saks). At that time, she checked the "Race" box. Plaintiff also listed November 18, 2000 as the earliest date discrimination took place and February 27, 2001 as the latest date discrimination took place. Ms. Stewart's second complaint was filed on November 19, 2001 against Foley's (May). When filing the second complaint, she checked the "Retaliation" box and listed October 18, 2001 as the earliest date discrimination took place and October 22, 2001 as the latest date discrimination took place. She also checked the "continuing violation" box.

Counsel for May relies on *Ridley v. Kimberly–Clark Corporation,* 2003 WL 648847 (E.D.Tex.) to support its position. In *Ridley,* the court precluded the plaintiff from maintaining an additional claim of racial discrimination under Title VII. However, in that case, the court noted that nowhere in the charge did Ridley allege that he had been discriminated because of his race. Ridley had only checked the "Retaliation" box. That case is different from the case now pending before this Court. While Ms. Stewart failed to check the "Race" box on her November 19, 2001 charge against Foley's (May), Ms. Stewart did reference the earlier charge of discrim-

---

**34.** 431 F.2d 455 (5th Cir.1970).

**35.** *Young* at 179 (emphasis in original) *citing Sanchez,* at 466.

ination based on her race (the April 2, 2001 charge) in support of her belief as to why Foley's retaliated against her. However, that charge of race discrimination was against Parisian (Saks) and not May. It is clear that Ms. Stewart did not file another charge or make any additional statement in the EEOC complaints regarding any present or ongoing racial discrimination by Foley's nor did she list any charge or discussion of racial hostile work environment. Thus, plaintiff is precluded "by the four corners of her document" from asserting this claim of a racial hostile work environment.

There are a variety of cases that have precluded plaintiffs from asserting discrimination claims in Title VII suits when they have not exhausted all administrative remedies. For example, in *Seppy v. City of Irving, Texas*,[36] the court granted summary judgment as to the plaintiff's race, gender, retaliatory, and hostile work environment discrimination claims because in her first charge of discrimination, she alleged demotion as a result of national origin discrimination and her subsequent charge was one of age discrimination, but "no other discrimination was alleged in any manner." The Court noted: "Each charge specifically checked: (1) national origin discrimination; and (2) age discrimination. Plaintiff never filed a charge alleging race, gender, retaliatory, and hostile work environment discrimination." [37]

Likewise, in *Lawrence v. United Airlines, Inc.*,[38] the court held that "because Plaintiff failed to raise the hostile work environment allegation in the administrative process, the Court finds that Plaintiff failed to exhaust his administrative remedies and Defendant is entitled to judgment

on this claim." This court also held that a claim of race discrimination does not encompass hostile work environment claims.[39]

Furthermore, in *Magana v. Tarrant/Dallas Printing, Inc.*[40] the court determined that the plaintiff's EEOC charge did not encompass his claim of race discrimination. The plaintiff had filed a charge with the EEOC alleging that he had been demoted based on his national origin. The defendant moved for summary judgment contending that the plaintiff's claims had exceeded the scope of his EEOC charge. The court agreed stating: "Magana checked only the box for national origin as the basis for his discrimination claim. He mentioned only national origin when he stated the basis for the claim. The only possible reference to race is Magana's assertion that he was replaced by a 'non-Hispanic.'" Absent a specific allegation of race discrimination in the EEOC charge, the court considers whether Magana's reference to replacement by a "non-Hispanic" is sufficient to allege race discrimination in the charge. The court holds that it is not. [41]

Thus, the law and facts of this case fail to support Stewart's claim because she failed to check the "Race" box in her complaint against May and failed to allege in her complaint the charge of hostile work environment. Thus, summary judgment is also granted in the alternative for these additional reasons.

### D. Remaining State Law Claims

 The plaintiff's remaining claims are state law discrimination claims of racial hostile work environment, sex discrim-

---

**36.** 2002 WL 1592609 (N.D.Tex.).

**37.** *Id.*

**38.** 2002 WL 1489536 (N.D.Tex.).

**39.** *Id.* (citations omitted).

**40.** 1998 WL 548686 (N.D.Tex. Aug. 21, 1998).

**41.** *Id.*

ination, and retaliation. The Court may exercise or decline supplemental jurisdiction over the state claims pursuant to 28 U.S.C. § 1367(a). In the exercise of its discretion, the Court declines to consider the merits of defendant's motion on the state-law claims, and instead dismisses these claims without prejudice.

### E. Conclusion

For reasons set forth above Saks', May's and Dupree's motions for summary judgment are granted. All federal claims are dismissed with prejudice.

Because the Court declines to exercise supplemental jurisdiction over the state law claims, these claims are dismissed without prejudice.

Judgment shall be entered accordingly.